UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES M. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.: 4:16-CV-966-JAR |
| v. | ) |
| | ) |
| DR. SAMUEL NWAOBASI | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 40) On July 24, 2017, Plaintiff filed a Response to Defendant's Motion, (Doc. No. 44), to which Defendant submitted a Reply on July 31, 2017, (Doc. No. 45). Defendant's Motion for Summary Judgment is therefore fully briefed and ready for disposition. For the following reasons, the motion will be granted.

**I.     Background**

Plaintiff James Scott ("Plaintiff"), proceeding *pro se*, brings this action for monetary damages under 42 U.S.C. § 1983 against Samuel Nwaobasi, M.D. ("Defendant").[1] Plaintiff alleges Defendant was deliberately indifferent to his serious medical needs while he was a pre-trial detainee at the St. Louis City Criminal Justice Center. Specifically, Plaintiff alleges that although test results revealed he was diabetic, Defendant failed to provide him with adequate treatment for his diabetes and thereby caused him prolonged pain and suffering. (Amended Complaint ("AC"), Doc. No. 7) Defendant now moves for summary judgment pursuant to Fed.

---

[1] On February 22, 2017, the Court dismissed Nurse Alana Boyland from this action without prejudice pursuant to Fed. R. Civ. P. 4(m). (Doc. No. 29)

R. Civ. P. 56(c) on the grounds that there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law.

## II. Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

## III. Facts[2]

---

[2] The facts are taken from Defendant's Statement of Uncontroverted Facts. Plaintiff did not respond to Defendant's Statement of Uncontroverted Material Facts. Local Rule 4.01(E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

Plaintiff's *pro se* status does not excuse him from complying with local rules, *see Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983). As a result of his failure to meet the requirements of Local Rule

**Plaintiff's medical history**

When first incarcerated at the St. Louis City Criminal Justice Center ("CJC") in early 2014, Plaintiff had a medical history of hypertension and chronic nerve pain (neuralgia) resulting from a previous injury to his left arm. (Defendant's Statement of Uncontroverted Facts ("SOF"), Doc. No. 42 ¶ 20) Because his hypertension was severe and difficult to control, (SOF ¶ 22), Plaintiff was enrolled in chronic care to ensure regular monitoring. (SOF ¶ 23) At this time, Plaintiff did not report any symptoms commonly associated with diabetes, e.g. frequent thirstiness, frequent urination, and blurred vision. (SOF ¶ 24)

Between April 2014 and August 2014, Plaintiff was repeatedly monitored and treated for hypertension. On April 7, 2014, Plaintiff's blood pressure was reported as elevated at 152/100. (SOF ¶ 26) As of July 1, 2014, Plaintiff was taking Lisinopril and ASA (aspirin) for hypertension and Neurontin, an anticonvulsant used to treat neuralgia. (SOF ¶¶ 30, 31) On August 20, 2014, Plaintiff's hypertension was again evaluated. (SOF ¶ 32) Plaintiff was taking gabapentin for his neuralgia and had a highly elevated blood pressure of 230/160 despite medication. (SOF ¶¶ 33, 34) The evaluator, Dr. Caldwell, ordered additional hypertension medication and lab work. (SOF ¶ 34) On August 22, 2014, test results indicated that Plaintiff's fasting blood glucose level was 138, which, although elevated, is not sufficient to diagnose a patient with diabetes. (SOF ¶ 36)

---

4.01(E), Plaintiff is deemed to have admitted all facts in Defendant's Statement of Uncontroverted Facts. *Turner v. Shinseki,* No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing *Deichmann v. Boeing Co.,* 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999)). However, Plaintiff's failure to respond properly to Defendant's motion does not mean summary judgment should be automatically granted in favor of Defendant. Even if the facts as alleged by Defendant are not in dispute, those facts still must establish he is entitled to judgment as a matter of law. *Cross v. MHM Corr. Servs., Inc.,* No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

In September 2014, Plaintiff was treated again for hypertension. (SOF ¶ 37) In a follow-up appointment on October 13, 2014, the treating doctor noted that Plaintiff's blood pressure was elevated at 218/110 and increased Plaintiff's hypertension medication. Plaintiff had peripheral edema—a sign of hypertension—and chronic recurrent headaches—a common symptom of hypertension—but no sensory or motor defects that would have been relevant to a diagnosis of diabetic neuropathy. (SOF ¶ 40) On October 15, 2014, Plaintiff was again evaluated for high blood pressure and constant headaches. (SOF ¶ 42) He reported that his blood pressure increased whenever his headaches were severe. (SOF ¶ 43) Dr. Mallard, the treating physician, ordered blood work, which revealed that Plaintiff had an elevated fasting blood glucose level of 156. (SOF ¶ 45) In response to these results, Dr. Mallard ordered a Hemoglobin A1c test to better measure Plaintiff's blood glucose level. (SOF ¶ 45)

A patient's fasting blood glucose level is an indicator of the amount of glucose present in a patient's blood stream. (SOF ¶ 4) While an elevated fasting blood glucose level may indicate diabetes mellitus type II, (SOF ¶ 3), it might also indicate that the patient has failed to adequately fast before the blood work (SOF ¶ 5). To gain a more accurate measurement of a patient's blood glucose level, it is common practice to conduct a Hemoglobin A1c ("A1c") test when a patient exhibits an elevated blood glucose level. (SOF ¶¶ 5, 6) At 5.6% or less, the A1c indicates the patient is non-diabetic; between 5.6% and 6.4%, the patient is pre-diabetic; and over 6.5% the patient is diabetic. (SOF ¶ 7) The higher the A1c, the higher the average blood glucose level. (SOF ¶ 9)

**Plaintiff's treatment by Defendant**

In October 2014, Defendant began work at CJC. (SOF ¶ 46) On October 23, 2014, Defendant reviewed the A1c results that Dr. Mallard had ordered—Plaintiff's A1c was 7.1%[3], (SOF ¶ 47), which indicated diabetes (SOF ¶ 48). Standard treatment for diabetes takes one of three forms: conservative treatment through diet, exercise, and weight-loss; prescription of oral medication; or prescription of insulin. (SOF ¶ 11) Because medications carry side effects, Defendant prefers to treat an A1c of 7% conservatively. (SOF ¶ 17) Therefore, rather than prescribe oral medication or insulin, Defendant believed that diet, exercise, and weight-loss would sufficiently control Plaintiff's diabetes. (SOF ¶ 48) Defendant did, however, address Plaintiff's chronic migraines by prescribing Neurontin. (SOF ¶ 49)

Between October 2014 and March 2015, Plaintiff continued to receive treatment for hypertension and headaches. On October 31, 2014, Plaintiff had a highly elevated blood pressure of 220/145 and was admitted to the infirmary for a 23-hour observation, during which Defendant changed his hypertension medication, (SOF ¶¶ 50, 51). Defendant also ordered additional pain medication for Plaintiff's headaches. (SOF ¶ 52) On November 1, 2014, Plaintiff's blood pressure returned to 128/78, and he was discharged. (SOF ¶¶ 53, 54) Suspecting that Plaintiff was not taking his blood pressure medication, Dr. Mallard ordered the medication to be crushed and floated in water to administer for the next 30 days. (SOF ¶¶ 54-56) In November, Defendant again adjusted Plaintiff's blood pressure medication. (SOF ¶ 57) By December, Defendant considered Plaintiff's hypertension controlled at 130/80. (SOF ¶ 58)

In January of 2015, Dr. Caldwell renewed Plaintiff's hypertension medication and noted that his hypertension was under control. (SOF ¶ 61) In February, Defendant prescribed baclofen

---

[3] Plaintiff claims his initial A1c reading was 9%, (AC at 6), but he has identified nothing in the record supporting this claim. Such self-serving, conclusory statements without support do not create factual disputes sufficient to defeat summary judgment. *Inver Grove Heights*, 2 F.3d at 279.

for Plaintiff's pain, and in March, again prescribed more hypertension medication. (SOF ¶¶ 62-64). Plaintiff was now taking six different hypertension medications and several medications for neuralgia, chronic headaches, and asthma. (SOF ¶ 64)

On March 16, 2015, Defendant ordered a second A1c. (SOF ¶ 65) This test indicated that Plaintiff's A1c was 7.2% — still diabetic but only .1% higher than his October 2014 test results. (SOF ¶ 66) Convinced that Plaintiff's diabetes was under control and that additional medications would increase the likelihood of unwanted drug interference with his other medications, Defendant continued to believe that conservative treatment through diet and exercise was in Plaintiff's best interest. (SOF ¶ 67) As he had already counselled Plaintiff on lifestyle modification, nutrition, exercise and weight-loss four days prior, Defendant did not take any additional treatment steps. (SOF ¶¶ 67-68)

From March 2015 until July 2015, Plaintiff continued to be treated for hypertension and headaches. On March 17, 2015, Defendant adjusted Plaintiff's hypertension medication. (SOF ¶ 70) Then, on April 11, in response to elevated blood-pressure readings, Dr. Mallard ordered his hypertension medication to be crushed and floated. (SOF ¶ 71) At a later follow-up appointment, Defendant again adjusted Plaintiff's hypertension medication and provided additional medications to treat Plaintiff's headaches and neuralgia. (SOF ¶ 72) In May, Defendant renewed these medications. (SOF ¶ 75) On July 6, 2015, Defendant ordered lab work that indicated Plaintiff had a blood glucose level of 284. That month, Defendant ended his employment with CJC.

**Plaintiff's treatment after Defendant left CJC**

In July, 2015, Dr. Fuentes began working at CJC and treating Plaintiff. (SOF ¶¶ 78, 79) Like Defendant, Dr. Fuentes continued to monitor and treat Plaintiff for hypertension and

recurrent headaches. (SOF ¶ 80) Noting that Plaintiff's March lab work revealed an A1c of 7.2%, Dr. Fuentes counselled Plaintiff on the importance of diet and exercise with regard to his hypertension and diabetes and prescribed metformin, an oral diabetes medication, on August 18. (SOF ¶¶ 82, 83) Dr. Fuentes noted that Plaintiff's A1c had not been addressed since October 2014. (SOF ¶ 82) On August 27, Dr. Fuentes doubled the dosage of metformin and ordered another A1c test, which indicated an A1c of 13.1%. (SOF ¶ 86) Dr. Fuentes immediately admitted Plaintiff into the infirmary for poorly controlled diabetes and prescribed insulin and an Accu-Chek three times a day. (SOF ¶ 87) On September 4, Plaintiff was discharged from the infirmary. (SOF ¶ 88)

By November 10, 2015, Plaintiff's A1c had dropped to 7.8%. (SOF ¶ 91) Dr. Fuentes continued to monitor Plaintiff's blood glucose level and, on February 11, 2016, listed Plaintiff's diagnosis as diabetes mellitus, type II. (SOF ¶ 92) On February 12, Plaintiff's A1c had dropped even further to 6.0%, which is considered to be in the pre-diabetic range. (SOF ¶¶ 7, 93) Although Plaintiff complained of blurry vision, a June 28 diabetic eye examination revealed no evidence of diabetic ophthalmic complications. (SOF ¶ 95)

**IV.     Discussion**

A pretrial detainee's claims are evaluated under the Fourteenth Amendment, and he is "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006). Therefore, a detainee's Fourteenth Amendment claim of deliberate indifference is analyzed under the deliberate indifference standard for an Eighth Amendment violation. *Id.* (citing cases).

Determining whether a doctor has acted with deliberate indifference requires both an objective and a subjective analysis. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014).

Plaintiff must show (1) that he suffered from an "objectively serious medical need" and (2) that Defendant "actually knew of but deliberately disregarded" that serious medical need. *Id*. Deliberate indifference is "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (internal quotations and citations omitted). Deliberate indifference may be found where "medical care [is] so inappropriate as to evidence intentional maltreatment." *Id.* (internal quotations and citations omitted).

Plaintiff argues that Defendant was deliberately indifferent to his serious medical need for diabetes treatment. He claims that he suffered from hypertension and debilitating headaches as a result. Plaintiff has failed to provide sufficient evidence to create a genuine issue of material fact as to whether he had an objectively serious medical need for additional diabetes treatment. Defendant asserts, and Plaintiff has not disputed, that an A1c between 7.0% and 7.5% means that a patient's blood glucose level is in good control. (SOF ¶ 59) Plaintiff's initial A1c of 7.1% was comfortably within that range. Defendant believed that the lifestyle modification he had already recommended was the best option for maintaining control of Plaintiff's diabetes while minimizing the chances of drug interference with Plaintiff's hypertension and neuralgia medications, The record shows that Plaintiff's A1c remained stable between October 2014 and march 2015, which supports the adequacy of the treatment he received. The fact that Plaintiff's A1c subsequently rose to 13% after Defendant left CJC does not establish that Plaintiff had a serious medical need requiring more aggressive treatment while he was being treated by Defendant. Plaintiff has provided no evidence suggesting this subsequent rise is attributable to

any inadequacy of Defendant's care rather than Plaintiff's failure to modify his diet, as Defendant had recommended. (SOF ¶ 102)

Even assuming Plaintiff had a serious medical need for more aggressive care, Plaintiff has failed to demonstrate that Defendant actually knew of but deliberately disregarded this need. In his Amended Complaint, Plaintiff characterizes Defendant's failure to provide diabetes treatment as "neglect." (AC at 6) But mere neglect falls short of the deliberate indifference standard, which requires a showing that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and that he actually "draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It is not enough to claim that a defendant should have been aware of Plaintiff's medical need—such a showing would demonstrate mere negligence. Rather, Plaintiff must provide evidence that Defendant was actually aware he was denying Plaintiff care for an objectively serious medical need. *See Buckman*, 756 F.3d at 1065. No evidence in the record supports such a claim. Moreover, doctors are entitled to their medical judgment. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); *see also White v. Farrier*, 849 F.2d 322 (8th Cir. 1988). Exercising his independent professional judgment, Defendant decided to treat Plaintiff's diabetes conservatively while aggressively treating Plaintiff's more significant medical issue of hypertension. Even if mistaken, Defendant is entitled to this judgment. *Dulany*, 132 F.3d at 1234.

Plaintiff attempts to establish deliberate indifference by comparing Defendant's treatment with that provided by Dr. Fuentes after Defendant left the CJC. However, "[m]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). This is true even if the differing opinion is that of another doctor. *See, e.g.,*

9

*Harris v. Corizon, LLC*, No. 1:15CV26 CEJ, 2017 WL 1036254, *8 (E.D. Mo. Mar. 17, 2017) ("Evidence that another doctor would have performed a different type of graft is not sufficient to support an Eighth Amendment claim"). Consequently, the fact that Dr. Fuentes subsequently provided a different form of treatment does not by itself support Plaintiff's claim that Defendant acted with deliberate indifference. At most, it demonstrates a legitimate disagreement between two doctors concerning the ideal treatment for Plaintiff's diabetes.

In his Response, Plaintiff relies on Dr. Fuentes's statement that she "noticed that Plaintiff's A1c had not been addressed since October 2014" to support his contention that his diabetes was not treated by Defendant. (Doc. No. 44 ¶ 3c) The plain meaning of Dr. Fuentes' statement, however, suggests the opposite—that Plaintiff's A1c had been addressed in October 2014, but had not been addressed again since then. Since lab work ordered by Defendant indicated Plaintiff's A1c remained stable from October 2014 until March 2015, Defendant's decision not to address Plaintiff's A1c with more aggressive treatment reflects his independent professional judgment based on medical monitoring of Plaintiff's condition. It does not support a claim for deliberate indifference. *See Harris*, 2017 WL 1036254, at *8.

Finally, even if the record contained some evidence that Defendant was deliberately indifferent to Plaintiff's serious medical need, Plaintiff has not provided any evidence that he suffered harm as a result. *See Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (where deliberate indifference claim is based on delay in treatment, plaintiff must produce verifying medical evidence establishing detrimental effect of delay). When alleging that a doctor's deliberate indifference resulted in a delay in medical care, the detainee "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). Although Plaintiff asserts that he

"continued to suffer blood pressure elevations at alarming heights, excruciating and/or debilitating headaches, and stomach pains," (AC at 6), he has not presented any medical record evidence demonstrating that these symptoms were the effect of Defendant's alleged failure to prescribe diabetes medication. To the contrary, the record indicates a history of these symptoms preceding his diabetes diagnosis (SOF ¶¶ 20, 26, 32-34), and that Plaintiff experienced these symptoms even while his blood sugar was under control (SOF ¶ 50). Plaintiff has also not disputed Defendant's assertion that headaches are a common symptom of hypertension, or offered any evidence rebutting Defendant's assertion that diabetes does not cause hypertension. Thus, Plaintiff has not alleged facts sufficient to show that his headaches and hypertension were caused by Defendant's failure to prescribe diabetes medication.

Plaintiff further alleges that Defendant did not train or direct his subordinates. (AC at 6) Supervisors are not liable for Eighth Amendment claims brought under § 1983 on a respondeat superior theory. *See Wilson v. Cross,* 845 F.2d 163, 165 (8th Cir. 1988). A supervisor may be held individually liable under § 1983 only if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. *See Wever v. Lincoln Cty., Nebraska,* 388 F.3d 601, 606–07 (8th Cir. 2004). However, "[w]ithout the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case." *Crumley v. City of St. Paul,* 324 F.3d 1003, 1008 (8th Cir. 2003).

### V. Conclusion

Summary judgment is appropriate when one party has presented no evidence sufficient to create a question of fact with regard to an essential element of that party's claim. *Brooks v. Roy*, 776 F.3d 957, 959 (8th Cir. 2015) (citing *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1032 (8th

Cir. 2012)). There being no evidence from which a reasonable jury could find that Defendant acted with deliberate indifference to Plaintiff's serious medical needs, Plaintiff fails to state a claim under § 1983, and Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Samuel Nwaobasi's Motion for Summary Judgment [40] is **GRANTED.**

A separate Judgment will accompany this Memorandum and Order.

Dated this 26th day of March, 2018.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**